UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEIGH KEYES,

       Petitioner,

                                         Case No. 1:09-cv-947
v.                                       Hon. Gordon J. Quist

LLOYD RAPELJE,

       Respondent.
                                    /

**REPORT AND RECOMMENDATION**

Petitioner Leigh Keyes, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

On December 2, 2002, petitioner entered a guilty plea in the Kent County Circuit Court to charges of assault with intent to murder, M.C.L. § 750.83 and home invasion first degree, M.C.L. § 750.110(a)(2). Plea Trans. (Dec. 2, 2002) (docket no. 9); Judgment of sentence (May 12, 2003) (docket no. 16). On May 12, 2003, petitioner was sentenced to a term of 14 to 50 years for the assault conviction and 10 to 20 years for the home invasion conviction, with the sentences to be served consecutively. Sent. Trans. at pp. 10-12 (May 12, 2003) (docket no. 10); Judgment of sentence.

The procedural history after the sentencing was summarized by the court in an earlier federal habeas action filed by Keyes:

> Petitioner subsequently filed a motion for the appointment of appellate counsel. The trial court denied petitioner's request for appointment of appellate counsel, based upon the fact that petitioner had pleaded guilty and had received a

sentence within the sentencing guidelines range as scored by the court, but above the range scored by defense counsel and below the range scored by the probation department, and was therefore not entitled to the appointment of appellate counsel under Michigan law. *People v. Keyes*, 02-05046-FC (Kent County Circuit Court, September 9, 2003). The trial court subsequently denied petitioner's motion for reconsideration. *Id.*

Petitioner thereafter filed a *pro se* application for leave to appeal with the Michigan Court of Appeals. As part of this appeal, petitioner again requested the appointment of appellate counsel. The Michigan Court of Appeals denied petitioner leave to appeal. *People v. Keyes*, 253538 (Mich.Ct.App. June 15, 2004). Petitioner then filed a *pro se* application for leave to appeal to the Michigan Supreme Court, in which he again requested the appointment of appellate counsel. The Michigan Supreme Court denied petitioner leave to appeal. *People v. Keyes*, 471 Mich. 952, 690 N.W.2d 110 (2004).

Petitioner has now filed an application for a writ of habeas corpus on several grounds. Respondent has filed an answer, in which he has confessed error with respect to petitioner's claim regarding the trial court's failure to appoint appellate counsel following his guilty plea.

*Keyes v. Renico*, No. 05-cv-71160-DT, 2005 WL 2173212 at *1 (E.D. Mich. Sept.2, 2005).

In the previous habeas action, the federal court found that petitioner had been denied the right to appellate counsel, citing *Halbert v. Michigan*, 545 U.S. 605 (2005). *Id.*, 2005 WL 2173212 at *4. As a remedy, the court conditionally granted petitioner's writ of habeas corpus, and ordered "that the State of Michigan shall, within fifty-six days, either appoint counsel for the petitioner to prepare an application for leave to appeal or a motion to withdraw the guilty plea with a *Ginther* hearing to determine the issue of the effective assistance of trial counsel and accept said appeal or motion for filing within fifty-six days thereafter, or release the petitioner from its unlawful custody, in which case the petitioner's convictions shall be vacated." *Id.*

The Kent County Circuit Court appointed appellate counsel, who filed a "motion to withdraw plea and/or for correction of the judgment of sentence" in the state criminal action. Motion to withdraw plea (docket no. 11). Petitioner's motion raised two grounds:

2

> I. [Petitioner's] plea should be withdrawn as the factual basis for the guilty plea was lacking for assault with intent to murder, and [petitioner] was denied the effective assistance of counsel.
>
> II. [Petitioner] is entitled to resentencing because the trial court erred in scoring points for OV 7.

*Id.*

The Kent County Circuit Court held a hearing on petitioner's motion to withdraw the plea and an evidentiary hearing with respect to the circumstances surrounding the plea. Motion to withdraw plea Trans. (Sept. 8, 2006) (docket no. 13); Evidentiary Hearing Trans. (Nov. 20, 2006) (docket no. 14). The trial court denied the motion to withdraw. Opinion (Dec. 15, 2006) (docket no. 15).

Petitioner raised the same two issues in a delayed application for leave to appeal. Delayed Appl. (docket no. 19). The Michigan Court of Appeals dismissed the application for lack of jurisdiction because it was untimely filed. *People v. Keyes*, No. 275280 (Order) (Mich. App. May 30, 2008) (docket no. 19). Petitioner raised the same two claims in an application for leave to appeal to the Michigan Supreme Court. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the Michigan Court of Appeals with instructions to treat the application as having been filed within the applicable deadline. *People v. Keyes*, No. 136839 (Mich. Dec. 18, 2008) (docket no. 19).

On remand, the Michigan Court of Appeals denied petitioner's delayed application for leave to appeal for lack of merit in the grounds presented. *People v. Keyes*, No. 275280 (Order Jan. 28, 2009) (docket no. 18). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the two earlier issues and a new issue:

> III. The Court of Appeals denied [petitioner] equal protection under the state and federal constitution when it rubber-stamped [petitioner's] appeal on remand by the Michigan Supreme Court, thereby, denying him a meaningful review of his appeal where the case was denied in unprecedented record time.

Appl. (docket no. 20). The Michigan Supreme Court denied the application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Keyes*, No. 138306 (Order) (Mich. June 23, 2009). On October 14, 2009, Keyes filed the present petition for habeas relief raising Issues I and II.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Petitioner's habeas claims

#### A. Petitioner's guilty plea for assault with intent to murder should be withdrawn because his plea lacked a factual basis.

Petitioner contends that he should be allowed to withdraw his plea to the charge of assault with intent to commit murder because the plea lacked a factual basis. Petitioner's claim is not cognizable on federal habeas review. A state court is not required under the Constitution to establish a factual basis for a guilty plea. "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "[S]o long as a defendant voluntarily, knowingly, and understandingly consents to be sentenced on a charge . . . there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir.1975). *See also, Bonior v. Conerly*, 416 Fed.Appx. 475, 478 (6th Cir. 2010) (observing that to the extent the habeas petitioner claimed that there was an insufficient factual basis for his plea, that claim was not cognizable in federal habeas, rather such a claim should be raised in the state appellate proceeding). Accordingly, petitioner's claim should be denied.

#### B. Petitioner's guilty plea for assault with intent to murder should be withdrawn due to ineffective assistance of counsel.

Petitioner contends that his guilty plea should have been withdrawn because he entered the plea based upon erroneous information provided by his counsel.

##### 1. Petitioner's guilty plea

Petitioner offered his plea shortly before the commencement of his scheduled jury trial. Plea Trans. at pp. 5, 18. At that time, the court advised petitioner of the maximum penalties

for the charged offenses, i.e., life in prison for the assault with intent to murder, 20 years in prison for the home invasion first degree, and the possibility of receiving a consecutive sentence for the crime (i.e., the assault) committed during the home invasion. *Id.* at pp. 4, 11. The court noted that under the plea agreement, the prosecutor would not seek an enhanced sentence for petitioner's history as a habitual offender. *Id.* at p.4. The court also advised petitioner of a number of rights which he would be giving up by pleading guilty: the right to a trial by a judge or jury; the presumption of innocence; the right to confront and cross-examine the prosecution's witnesses; the right to subpoena witnesses for his defense; the right to remain silent at trial; the right to appeal his conviction; and the right to have an appointed lawyer on appeal. *Id.* at pp. 5-11. Petitioner stated that he understood that he was waiving these rights. *Id.*

In addition, the Court addressed the plea agreement. For his part, petitioner agreed to plead guilty to assault with intent to murder and home invasion first degree, and to testify truthfully against the co-defendant if petitioner's testimony became necessary. *Id.* at pp. 12-13. In exchange for petitioner's pleas and cooperation, the government would dismiss the supplemental information for the habitual offender sentencing enhancements. *Id.* Petitioner testified that this was the entire agreement, that no one had threatened him to plead guilty, that no one promised him anything else in exchange for his guilty pleas, and that his guilty pleas were free and voluntary. *Id.* at pp. 13-14.

Petitioner testified as follows. On May 2, 2002, he and Carthell Davis kicked in the door of an apartment at 148 Oak Street, SE, in Grand Rapids, Michigan. *Id.* at p. 14. They entered the apartment as a "scare tactic." *Id.* at p. 16. Davis stabbed a man in the apartment eight times. *Id.* He did not know why Davis stabbed the victim and had nothing to do with the stabbing. *Id.* at

pp. 15-16. When asked to explain the reason for the attack, petitioner's testimony was difficult to follow. Petitioner arrived at an apartment where he drank and "indulged" in drugs. *Id.* at p. 16. The victim had apparently asked someone to turn down the music in the apartment. *Id.* Petitioner understood that he and Davis were going to scare the victim, in petitioner's words, "Let him know 'Don't come over here and knock on the door. Don't be botherin' us.'" *Id.* Davis apparently had "other things" in mind. *Id.* After they kicked in the door, Davis jumped onto a bed where the victim and a woman were lying. *Id.* at p. 17. The woman "ended up on the floor" and petitioner kept her from leaving the room. *Id.* At that time, Davis and the victim "got into it." *Id.* at p. 17. Petitioner detained the woman, whom he believed was going to call the police. *Id.* The woman was able to leave the room and petitioner went into the kitchen. *Id.* Petitioner turned and saw Davis stab the victim, said "Oh, hell no" and ran out of apartment. *Id.* While petitioner detained the woman, he was not aware that Davis was stabbing the victim. *Id.* at p. 18.

Based on this testimony, the court concluded that while petitioner's testimony probably supported a home invasion first degree, petitioner did not admit to aiding and abetting an assault with intent to commit murder. *Id.* Because the plea agreement requirement two pleas, the judge rejected the agreement and advised the parties to prepare for trial. *Id.*

After a twenty-two minute recess, petitioner returned to the courtroom and offered additional testimony. *Id.* at pp. 19-22. This time, petitioner testified that he knew Davis was stabbing the victim in another room. *Id.* at pp. 19-20. Petitioner also knew that the victim ended up in the hospital. *Id.* at p. 20. Based on petitioner's testimony, the court accepted the plea:

> Well, it doesn't sound like the injuries turned out to be life-threatening, but there don't have to be any injuries at all to sustain this particular charge, just the intent to kill. And multiple stab wounds certainly could support that conclusion on the part of the jury, even if the accuracy of the stabber was pretty poor. And

> knowing that that was going on and precluding someone else from providing assistance can easily be aiding and abetting.

*Id.* at pp. 20-21. The Judge concluded:

> Mr. Keyes, I want you to know that I've made no agreements or deals with anybody about how this case is to be handled. I'm satisfied based upon all I've seen and heard that the plea you just offered to me, both of them, actually, were free, voluntary and intelligent.
>
> It's pretty apparent that you do, indeed, want to plead guilty to get the benefit of the bargain. I'm also satisfied based upon what you told me you did that a jury could find you guilty of aiding and abetting others, and assault with intent to murder.
>
> Under these circumstances, I will, therefore, accept the plea, order a pre-sentence investigation, and schedule sentencing. . .

*Id.* at pp. 21-22.

The test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act"). For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

9

raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973). When a defendant pleads guilty, he "simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers," *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and forecloses all subsequent non-jurisdictional appeals to his conviction, *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000).

When an offender seeks to reopen the proceeding after entering a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Broce*, 488 U.S. at 569. In resolving a state criminal defendant's federal habeas petition challenging the voluntariness of a guilty plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id.* A habeas petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

Here, the transcript of petitioner's guilty plea shows that the plea was voluntary and intelligent. Petitioner was aware of the rights he waived by entering a guilty plea. In petitioner's initial version of events, he acknowledged that he prevented the woman from calling the police, but denied knowledge of Davis' attack. After a twenty-two minute break, petitioner agreed to testify a second time, during which he admitted that he knew Davis was stabbing the victim. In short, after consulting with his attorney, petitioner voluntarily chose to return to the courtroom and admit the

10

existence of those facts which would allow him to satisfy his agreement with the government to plead guilty rather than proceed to a trial where he faced the possibility of a sentence enhancement.

### 2. Ineffective assistance of counsel

#### a. Petitioner's claim

Petitioner now contends, however, that his guilty plea should be withdrawn due to the ineffective assistance of trial counsel. In support of his claim, petitioner states that counsel told him: to change his story so that a factual basis could be met; that he had a valid issues for appeal; that he would receive good time while in prison; and, that he would get 81 to 135 months for his cooperation. Petitioner's Memo. at p. 10 (docket no. 2). In addition, counsel was unprepared for trial and persuaded petitioner to say that he knew Davis was stabbing the victim. *Id.*

#### b. The state court proceedings

Petitioner's claims are based upon his testimony at the evidentiary hearing in support of his motion to withdraw his guilty plea. At the hearing, petitioner testified that after the trial judge rejected his plea, petitioner met with counsel who advised him: that his best bet would be to take the plea; that "[s]he had no defense" for him; that it was "more than likely" that the Judge would go under the guidelines. Evid. Trans. at pp. 9-10. Counsel started crying and said that because of his case, she had lost 15 pounds. *Id.* at p. 10. Counsel had also talked to petitioner's brother, who agreed with her and suggested that petitioner take the plea deal. *Id.* Petitioner also admitted that his testimony which led to the acceptance of the plea, i.e., that he knew Davis was stabbing the victim, was not truthful. *Id.* at pp. 11-14.

The court trial denied petitioner's ineffective assistance of counsel claim on two grounds. First, the court concluded that petitioner was "estopped from even making the claim's

predicate factual assertions" because he "unequivocally acknowledged that he understood what he was told" and "said nothing at his plea of the circumstances of which he now complains." Opinion (Dec. 15, 2006) at p. 10.

Second, the court found that petitioner's counsel neither gave him deficient advice nor made any promises. *Id.* at p. 12. The court observed that:

> In light of the evidence at the trial of Mr. Davis, defense counsel was not off the mark if she told defendant that he had no defense. Often, the best a lawyer can do for a client is warn of impending doom, so that an opportunity to mitigate consequences is not lost. Had he gone to trial, defendant would have faced a Sentencing Guidelines range of at least 135-337 months, not the 135-225 months which resulted from his plea agreement, and, had it heard from the victims, who told a far more harrowing tale than was recounted in the pre-sentence report, this Court might have imposed a lengthier sentence. In sum, his attorney may have saved defendant years in prison.

*Id.* (footnote omitted). The court rejected petitioner's claim that counsel made a promise regarding his sentence, observing that the statement that "more than likely" petitioner would receive a sentence "under the Guidelines" was not a promise of such a sentence. *Id.* Finally, the court rejected petitioner's claim that counsel telling him that handling his case was very stressful "did not place cognizable pressure on [petitioner] to plead." *Id.* at p. 13. The court continued:

> Feeling the weight of responsibility does not render a lawyer incompetent; quite the contrary; and admitting as much does not render involuntary any plea by the client. If defendant's claim entitles him to withdraw his plea, all pleas become subject to attack, unless a defendant's attorney hid his or her feelings or admits to being uncaring.

*Id.*

### c. Discussion

When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

12

*Hill*, 474 U.S. at 58. Under the *Strickland* test: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. In the context of a guilty plea, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), quoting *Hill*, 474 U.S. at 58-59. To prevail on the prejudice requirement, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct. 733, 743 (2011) (internal quotation marks omitted). The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Where a state criminal defendant has pled guilty, the court should closely scrutinize a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective assistance of trial counsel. As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . .
>
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then

13

available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 131 S. Ct. at 741-42.

As an initial matter, the court agrees with the state trial court's determination that petitioner's counsel was not deficient. The court also agrees with the state trial court's determination that the underlying facts of his ineffective assistance claim are inconsistent with his testimony at the plea hearing. For example, petitioner's testimony that his plea was free and voluntary is inconsistent with his claim that counsel "persuaded" him to change his testimony and plead guilty.

Furthermore, petitioner's conclusory assertion that he would not have pled guilty but for counsel's alleged errors, is insufficient to demonstrate prejudice. "A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim." *Garrison v. Elo*, 156 F.Supp.2d 815, 829 (E.D. Mich. 2001). Rather the petitioner "must show that there is a reasonable probability that the *result* of the proceeding would have been different." *Id.* (emphasis in original). *See Hill*, 474 U.S. at 60 (denying claim of ineffective assistance of trial counsel where the petitioner did not allege that if counsel had correctly informed him about his parole eligibility date, "he would have pleaded not guilty and insisted on going to trial").

14

Here, petitioner has presented no evidence to show that he would not have pled guilty but for counsel's advice. Nor has he presented evidence that there was a reasonable probability that a jury would have found him not guilty. On the contrary, the trial judge, noting the evidence presented in Davis' trial, observed that petitioner's counsel "was not off the mark if she told [him] that he had no defense." Furthermore, if petitioner had gone to trial, and been found guilty, he would have faced substantially longer sentencing guidelines.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner's claim for relief should be denied.

> **C. Petitioner is entitled to re-sentencing because the state trial court erred in scoring points for offense variable 7.**

Petitioner contends that the state trial judge erred in calculating his sentence under Michigan's sentencing scheme. Petitioner's contention fails to state a federal constitutional issue. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The state's computation of petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review. *See Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See also Howard v. White*, 76 Fed.Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only"); *Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No.

93-1319, 1993 WL 478854 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is issue of state law not cognizable in federal habeas review); *Braun v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures"). Petitioner is not entitled to federal habeas relief on this state law claim.

## IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: January 31, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).